<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GREENSKIES RENEWABLE ENERGY, LLC, MICHAEL SILVESTRINI, ANDREW CHESTER, ARTHUR S. LINARES, and LUIS A. LINARES,<br><br>     Plaintiffs,<br><br>v.<br><br>ARCH INSURANCE COMPANY,<br><br>     Defendant. | Civil Action No: 16-5243-SDW-LDW<br><br>**OPINION**<br><br><br>September 13, 2017 |

**WIGENTON**, District Judge.

Before this Court is Defendant Arch Insurance Company's ("Arch" or "Defendant") Motion to Dismiss Greenskies Renewable Energy, LLC ("Greenskies"), Michael Silvestrini ("Silvestrini'), Andrew Chester ("Chester"), Arthur S. Linares, and Luis A. Linares' (collectively, "Plaintiffs") Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). Jurisdiction is proper pursuant to 28 U.S.C. §§ 1332. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated herein, the Motion to Dismiss is **GRANTED in part and DENIED in part**.

# I.    BACKGROUND AND PROCEDURAL HISTORY

Arch is an insurance company that issues performance and payment surety bonds on behalf of construction companies.  In 2012, Arch issued surety bonds in the amount of $50,000.00 ("Greenskies Bonds") to Greenskies, a solar energy company "engaged in the installation of solar panels and related energy systems for commercial, industrial and municipal entities."  (Am. Compl. ¶¶ 1, 13-14.)  On or about July 24, 2012, in connection with the issuance of those bonds, Plaintiffs entered into a General Indemnity Agreement with Arch ("Greenskies GIA").  (Am. Compl. ¶¶ 15-16.)  Signatories to the Greenskies GIA were Greenskies as Principal/Indemnitor, and Centerplan Construction Company, LLC ("Centerplan"), Robert Landino ("Landino"), Silvestrini, Chester, Arthur Linares and Luis Linares as Indemnitors.  (Dkt. No. 35-1 Ex. 2 at 8-9.) All of the Greenskies Bonds eventually "were discharged with no claims made against any bond." (Am. Compl. ¶ 2.)

The Greenskies GIA defines "Indemnitor" as any signatory to the GIA "or any other agreement that incorporates by reference the terms of" the Greenskies GIA.  (Dkt. No. 35-1 Ex. 2 at 1.)  The Greenskies GIA defines "Principal" as

> [a]ny Indemnitor on behalf of which [Arch] may execute a Bond and/or any Person whose name is or has been furnished to [Arch] by any of the Indemnitors or on behalf of which [Arch] has issued any Bond at the request of any Indemnitor, including, but not limited to, any of the Indemnitors named or referred to as 'Principal' in any bond, undertaking or recognizance.  The term 'Principal' also includes any present or future direct or indirect subsidiary, successor, affiliate or parent of any Indemnitor and any partnerships, LLCs, LLPs or other entities owned in whole or in part by any named Indemnitor.

(Dkt. No. 35-1 Ex. 2 at 1.)  The term "Bond" is defined as "[a]ny and all bonds, including but not limited to surety bonds, undertakings, guaranties, and any renewals or extensions thereof issued by [Arch], or issued by another at the request of [Arch], on behalf of Principal, whether issued prior to or subsequent to the effective date of this Agreement."  (Dkt. No. 35-1 Ex. 2 at 2.)

Between 2010 and 2016, Arch also issued separate performance and payment bonds worth millions of dollars for two large construction projects to Centerplan and Center Earth, LLC ("Center Earth") ("Centerplan Bonds"). (CT Compl. ¶¶ 14-28.)[1] Pursuant to the issuance of those bonds, Arch executed indemnity agreements with Centerplan and Center Earth, as well as with Landino, the owner and CEO of Centerplan and Center Earth, his wife Kelly Landino, and several companies also owned by Landino. (CT Compl. ¶¶ 15-17.) Those agreements, which were executed on or about July 10, 2010, October 15, 2010, and January 26, 2016 (collectively, the "Centerplan GIAs") all identified Centerplan as the "Principal/Indemnitor" and Landino as an "Indemnitor." (CT Compl. ¶¶ 15-17; Dkt. 36-2.) Greenskies is not a signatory to the Centerplan GIAs. Aside from Centerplan and Landino being Indemnitors for the Greenskies Bonds and Principal and/or Indemnitors on the Centerplan Bonds, the two sets of bonds are unrelated. (Am. Compl. ¶¶ 3-4.)

After executing the Centerplan GIAs, Arch received claims against the Centerplan Bonds. (CT Compl. ¶ 29.)[2] As of November, 2016, Arch had "made payments totaling $8,424,302.57 to resolve some of the payment bond claims that have been asserted against it, and has also incurred

---

[1] References to "CT Compl." refer to the Complaint filed in *Arch Ins. Co. v. Centerplan Constr. Co., LLC et al.*, No. 3:16-cv-1891 in the United States District Court for the District of Connecticut on November 16, 2016. That suit details the issuance of, and the litigation surrounding, the Centerplan Bonds.

[2] In response to these claims, Arch demanded that the parties to the Centerplan GIAs make their "books, records and other financial documents" available for Arch's review. (CT Compl. ¶ 34.) In August, 2016, Arch also gave notice to those same parties that claims had been made under the bonds, demanded that the parties "procure [Arch's] discharge from the [Centerplan] Bonds under which claims had been asserted and from all liability under those Bonds," demanded that the parties "hold harmless and indemnify [Arch] for all losses incurred and to be incurred by [Arch] as a result of having issued those Bonds," and demanded that the parties "post cash collateral with [Arch] . . . to secure [Arch's] pending exposures and potential liability on Bonds under which claims have been asserted." (CT Compl. ¶¶ 37-39.) When the parties to the Centerplan Bonds failed to comply with Arch's demands, Arch filed a six-count complaint in the United States District Court for the District of Connecticut against the parties to the Centerplan GIAs, seeking contractual and common law indemnification, contractual security, common law exoneration, *quia timet*, and disclosure of financial information. (CT Compl. ¶¶ 42-64.)

expenses and costs in regard to those" claims.  (CT Compl. ¶ 32.)  Arch contends that its potential

liability for the claims asserted under the Centerplan Bonds will exceed $18 million.  (CT Compl.

¶ 36.)

On August 5, 2016, Arch's counsel wrote to Plaintiffs alleging they had obligations via the

Greenskies GIA for claims made against the Centerplan Bonds and demanding that Indemnitors

"immediately procure the Surety's discharge from the [Centerplan Bonds] and all liability under

these Bonds" and "hold harmless and indemnify the Surety for all losses incurred and to be

incurred by the Surety as a result of having issued the [Centerplan Bonds]."  (Dkt. No. 35-1 Ex.

3.)  Plaintiffs did not respond, and on August 19, 2016, Arch's counsel again wrote to Plaintiffs to

demand "that the Principal and Indemnitors post cash collateral with the Surety in the amount of

$18,807,737.47 to secure the Surety's pending exposures on the [Centerplan Bonds]" no later than

August 29, 2016.  (Dkt. No. 35-1 Ex. 4.)

On August 29, 2016, the Plaintiffs filed suit in this Court.  (Dkt. No. 1.)  Plaintiffs'

Amended Complaint, filed three days later, seeks declaratory judgment that the Plaintiffs "have

no obligation or duty to Arch under the Greenskies GIA for any losses Arch incurred or will incur

under the Centerplan Bonds and/or any other bonds not issued to Greenskies," and alleges violation

of the implied covenant of good faith and fair dealing, the New Jersey Consumer Fraud Act, and

the Connecticut Unfair Trade Practices Act, and fraudulent inducement.  (Dkt. No. 5.)  On April

21, 2017, Arch filed the instant motion.  (Dkt. No. 35-2.)  Plaintiffs filed their timely opposition

on May 1, 2017 and Defendant filed its reply on May 8, 2017.  (Dkt. Nos. 36, 37.)

## II.     LEGAL STANDARD

An adequate complaint must be "a short and plain statement of the claim showing that the

pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  This Rule "requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

In considering a Motion to Dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (external citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) (discussing the *Iqbal* standard). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Plaintiffs "alleging fraud must state the circumstances of the alleged fraud[ulent act] with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it

is] charged.'" *Park v. M & T Bank Corp.,* No. 09–cv–02921, 2010 WL 1032649, at *5 (D.N.J. Mar. 16, 2010) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). "Plaintiffs may satisfy this requirement by pleading the 'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *Lum v. Bank of Am.,* 361 F.3d 217, 224 (3d Cir.2004) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,* 742 F.2d 786, 791 (3d Cir.1984)). "Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation." *Id.*; *see also Frederico*, 507 F.3d at 200; *Riachi v. Prometheus Grp.*, No. 16-CV-2749-SDW-LDW, 2016 WL 6246766, at *3–4 (D.N.J. Oct. 25, 2016); *Prudential Ins. Co. of Am. v. Goldman, Sachs & Co.*, No. 12-CV-6590-SDW, 2013 WL 1431680, at *7 (D.N.J. Apr. 9, 2013).

### III.    DISCUSSION[3]

Count I – Declaratory Judgment

In Count One, Plaintiffs seek a declaratory judgment that they "have no obligation or duty to Arch under the Greenskies GIA for any losses Arch incurred or will incur under the Centerplan Bonds and/or any other bonds not issued to Greenskies." (Am. Compl. ¶ 40.) Plaintiffs contend that their liability is limited to bonds issued on behalf of Greenskies as Principal under the Greenskies GIA. (*Id.*) Arch contends, however, that the contractual language must be read more broadly and that it clearly and unambiguously obligates Plaintiffs to indemnify Arch for losses "incurred by Arch by reason of having executed *any* 'Bonds' on

---

[3] The parties analyze their claims under both Connecticut and New Jersey law because of the extensive connections the parties have with those states. (Am. Compl. ¶12; Mot. Dismiss at 12; Pls.' Opp'n Br. at 15 n. 7). This Court will do the same where appropriate.

behalf of *any* 'Principal'" including Centerplan as Principal of the Centerplan GIAs. (Mot. Dismiss at 3-4 (emphasis added).)

The Declaratory Judgment Act ("DJA") provides: "In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a). To determine whether a justiciable controversy exists under the DJA, a court must consider whether: (1) the parties "have adverse legal interests;" (2) the facts are "sufficiently concrete to allow for a conclusive legal judgment;" and (3) the judgment would be "useful to the parties." *Surrick v. Killion*, 449 F.3d 520, 527 (3d Cir. 2006); *see also Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941) (noting that a court must consider "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment"); *Fed. Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 350 (3d Cir. 1986); *Montagano on behalf of Giano v. Safeco Ins. Co. of Am.*, No. CV 16-9375 (MLC), 2017 WL 2918913, at *6–7 (D.N.J. July 7, 2017). Adversity of interest requires a court to find "a substantial threat of real harm . . . [that] remains real and immediate throughout the course of the litigation." *Presbytery of N.J. of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1463 (3d Cir. 1994); *see also Surrick*, 449 F.3d at 527 (noting that the party seeking a declaratory judgment need not have "suffered a completed harm"). Conclusiveness requires a court to determine whether "judicial action at the present time would amount to more than an advisory opinion based on a hypothetical set of facts." *Presbytery*, 40 F.3d at 1468; *see also Step-Saver*

*Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 649 n.9 (3d Cir. 1990) (noting that conclusiveness

looks to "whether the parties' rights will be definitively decided by a declaratory judgment").

The "conflict between the parties ... cannot be 'nebulous or contingent,'" it "'must have taken on

fixed and final shape so that a court can see what legal issues it is deciding. . . .'" *Wyatt, V.I., Inc.

v. Virgin Islands*, 385 F.3d 801, 806 (3d Cir. 2004) (quoting *Pub. Serv. Comm'n of Utah v.

Wycoff Co.*, 344 U.S. 237, 244 (1952)).  Usefulness requires a court to look to "whether the

parties' plans of actions are likely to be affected by a declaratory judgment."  *Presbytery*, 40

F.3d at 1469 (quoting *Step-Saver Data Sys.*, 912 F.2d at 649 n.9).  Because the DJA was enacted

to "clarify legal relationships so that [parties] could make responsible decisions about the

future," *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1155 (3d Cir. 1995), courts must determine

"whether a declaratory judgment will affect the parties' plans of actions by alleviating legal

uncertainty." *Surrick*, 449 F.3d at 529.

Here, the parties have clearly adverse legal interests regarding who is responsible for

claims made pursuant to the Centerplan Bonds.  Plaintiffs face a substantial monetary harm if

they are obligated to indemnify Arch.  As this matter is one of contractual interpretation, this

Court is capable of rendering a conclusive legal judgment as to Plaintiffs' liability.  There is also

no doubt that such a judgment would be useful to the parties, allowing them to clarify the scope

of Plaintiffs' obligations under the Greenskies GIA and its relationship, if any, to the Centerplan

Bonds.  This Court is not persuaded by Defendant's position that the contract is clear and

unambiguous – there is at least a question as to which parties may be deemed Principals under

the Greenskies GIA and how far their responsibilities under the contract extend.  Therefore, the

dispute is ripe for resolution and a declaratory judgment would be appropriate in this matter.

Defendant's Motion to Dismiss Count I will be denied.

<u>Count II -- Breach of the Implied Covenant of Good Faith and Fair Dealing</u>

Every contract in New Jersey contains an implied covenant of good faith and fair dealing. *Fields v. Thompson Printing Co.*, 363 F.3d 259, 270 (3d Cir. 2004). This requires both parties to refrain from taking actions that "will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Id.* Thus, "[a] party can be held liable for a breach of the implied covenant even if it has not violated an express term of the contract because the covenant may fill in the gaps where necessary to give efficacy to the contract as written." *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 756 (D.N.J. 2013) (quoting *Fields*, 363 F.3d at 271–2) (internal quotation marks omitted); *see also Freshpair.com, Inc. v. Butlein*, No. 17-CV-905(SDW)(LDW), 2017 WL 2968395, at *2-3 (D.N.J. July 11, 2017) (discussing the covenant and its application). Connecticut contracts also include an implied covenant of good faith and fair dealing with a similar scope and purpose. *See, e.g.*, *Renaissance Mgmt. Co. v. Connecticut Hous. Fin. Auth.*, 915 A.2d 290, 297-98 (Conn. 2007) (noting that a successful claim for breach of the implied covenant of good faith and fair dealing requires a showing that the defendant acted in bad faith to "impede[] the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract"); *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 849 A.2d 382, 387-88 (Conn. 2004).

Count Two alleges that "[b]y its strained interpretation of the Greenskies GIA and by reason of issuing the Demand to Plaintiffs seeking to hold them liable for losses Arch incurs in connection with the Centerplan Bonds, which liability far exceeds the scope and intent of the Greenskies GIA, Arch has breached the implied covenant of good faith and fair dealing in connection with the Greenskies GIA," resulting in Plaintiffs' harm. (Am. Compl. ¶¶ 41-43.) Plaintiffs' allegations, however, do little more than indicate a disagreement over contractual

interpretation, and fail to provide with any specificity how Defendant acted in bad faith. Such conclusory allegations and vague pleading fail to satisfy the requirements of Rule 8(a)(2). Therefore, this Court will grant Defendant's Motion to Dismiss Count Two of the Amended Complaint.

Count III – Fraudulent Inducement

Under New Jersey law, the elements required to establish a claim of common law fraud, fraudulent misrepresentation, and fraudulent inducement are identical: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Banco Popular N. Am. v. Gandi,* 876 A.2d 253, 260 (N.J. 2005) (quoting *Gennari v. Weichert Co. Realtors,* 691 A.2d 350, 367 (N.J. 1997)); *see also Jewish Ctr. of Sussex Cty. v. Whale,* 432 A.2d 521, 524 (N.J. 1981). Connecticut law is similar in scope and purpose. *See, e.g.*, *Sturm v. Harb Dev., LLC,* 2 A.3d 859, 872 (Conn. 2010); *456 Corp. v. United Natural Foods, Inc.*, No 09-1983, 2011 WL 87292, at *3 (D. Conn. Jan. 11, 2011). Plaintiffs' fraud claims must also meet the heightened pleading requirements of Rule 9(b). As currently alleged in the Complaint, however, Plaintiffs have neither articulated a material misrepresentation of fact made to induce them into signing the Greenskies GIA, nor identified who made those allegedly false statements or when they made those statements. Rather, Plaintiffs dispute Defendant's reading of the Greenskies GIA, specifically the definition of the term "Principal," and suggest that because the parties have different understandings of the contract, Defendant must have intended to defraud them. This is insufficient to plead fraud. Defendant's Motion to Dismiss Count Three of the Amended Complaint will be granted.

Count IV – Violation of New Jersey Consumer Fraud Act

In Count IV of the Complaint, Plaintiffs contend Defendant violated the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. § 56:8-1, *et seq.*, through its representations and omissions. (Am. Compl. ¶¶ 33-34, 52-57.) In order to sufficiently state a claim for violation of the CFA, a plaintiff must allege: "1) unlawful conduct by [the] defendant; 2) an ascertainable loss by [the] plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009). With regard to the first element, that Defendant acted unlawfully, Defendant must have engaged in an "unlawful practice," which the CFA defines as:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise ....

N.J.S.A. § 56:8-2. In addition, as a claim sounding in fraud, Plaintiff's CFA claim must satisfy the heightened pleading standard of Rule 9(b). *See F.D.I.C. v. Bathgate II*, 27 F.3d 850, 876 (3d Cir. 1994). Once again, Plaintiffs dispute Defendant's interpretation of the Greenskies GIA, but their pleading does not allege sufficiently that Defendant used "unconscionable practices" or engaged in fraud. Defendant's Motion to Dismiss Count Four of the Amended Complaint will be granted.[4]

---

[4] In the alternative, Plaintiffs allege a claim for violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), which prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42–110b(a). A plaintiff seeking to state a CUTPA claim must plead "that she (1) suffered an ascertainable loss of money or property, (2) that was caused by, (3) an unfair method of competition or an unfair or deceptive act in the conduct of any trade or commerce." *Smith v. Wells Fargo Bank, N.A.*, 158 F. Supp. 3d 91, 100 (D. Conn.), *aff'd*, 666 F. App'x 84 (2d Cir. 2016); *see also Edwards v. N. Am. Power & Gas, LLC*, 120 F. Supp. 3d 132, 140-41 (D. Conn. Aug. 4, 2015). To determine whether an act or practice is unfair, courts must examine: "(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers ...." *Harris v. Bradley Mem'l Hosp. & Health Ctr., Inc.*, 994 A.2d 153, 173 (Conn. 2010); *see also Smith*, 158 F. Supp. 3d at 100. "A practice may be considered

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is **GRANTED in part and DENIED in part**.  Plaintiffs shall be permitted thirty (30) days to file an Amended Complaint.  An appropriate order follows.

        /s/ Susan D. Wigenton    
        **SUSAN D. WIGENTON, U.S.D.J.**

Orig:        Clerk
cc:        Leda D. Wettre, U.S.M.J.
        Parties

---

unfair if it meets one of the criteria to a great degree or meets multiple criteria to a lesser extent." *Smith*, 158 F. Supp. 3d at 100.  Plaintiffs' CUTPA claim fails to plead unfair competition or deceptive act.  Plaintiffs disagree with Defendant's reading of the contract they entered into, but that does not on the facts as alleged, rise to the level of an unfair trade practice.  Defendant's Motion to Dismiss Count Five will be granted.